# United States District Court
## for the Northern District of Oklahoma

---

Case No. 25-cv-363-JDR-MTS

---

Valentine Barger; Rachel Jolliff,

*Plaintiffs,*

*versus*

City of Tulsa,

*Defendant.*

---

## OPINION AND ORDER

---

In August 2024, Plaintiffs Valentine Barger and Rachel Jolliff participated in an investigation by the City of Tulsa's Human Resources department regarding one of their coworkers, Crista Kaler. During the investigation, Plaintiffs described and objected to Ms. Kaler's harassment of another employee. Soon afterward, the City fired both Plaintiffs. They sued the City, arguing that the City wrongfully retaliated against them in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The City moved to dismiss Plaintiffs' claims, arguing that Plaintiffs did not allege that they engaged in protected opposition and therefore cannot state a claim for relief under Title VII. Dkt. 17. The Court agrees with the City and grants the motion.

I

Plaintiffs Valentine Barger and Rachell Joliff were employed at the City of Tulsa's Municipal Court Department when they became aware of concerning conduct by their coworker, Crista Kaler. Among other things, Ms. Kaler would leave phallic replicas on employees' desks and discuss sexual

No. 25-cv-363

behavior in graphic detail. Dkt. 15 at ¶ 11.[1] This conduct was directed primarily toward one of Plaintiffs' coworkers. There is no allegation that Plaintiffs themselves were the subject of Ms. Kaler's misconduct. Dkt. 15 at ¶¶ 11-13, 19-20.

The City conducted two investigations into Ms. Kaler's misconduct. During the first investigation in January 2024, the City questioned Plaintiffs, who described and objected to Ms. Kaler's harassment. Dkt. 15 at ¶¶ 14-15. The City fired Ms. Kaler at the close of that investigation, but she was reinstated several months later.[2] *Id.* at ¶¶ 16-19. When she returned to the office, she also returned to her misconduct. *Id.* In early August 2024, the City again investigated and questioned Plaintiffs about Ms. Kaler's conduct. Plaintiffs again reported the harassment and "objected to the sexually harassing work environment created by Kaler," thereby "opposing such harassment in the workplace." *Id.* at ¶¶ 20-21.

The City fired Ms. Joliff without explanation on August 16, 2024. Ms. Barger was fired about two weeks later. *Id.* at ¶¶ 24-25. Plaintiffs sued the City for unlawful retaliation—and only unlawful retaliation.[3] They allege that the City fired them because of "their complaints and participation in the sexual harassment investigation" in violation of Title VII. *Id.* at ¶¶ 26-28. The City moved to dismiss Plaintiffs' retaliation claim, arguing that Plaintiffs have not

---

[1] All citations use CMECF pagination.

[2] The reasons for the reinstatement, which were discussed at the hearing on the City's motion, are not discussed in the amended complaint and are not considered for purposes of this opinion.

[3] Significantly, "Plaintiffs are not asserting their own cause of action for sexual harassment . . . ." Dkt. 19 at 11. At the hearing on this matter, Plaintiffs' counsel acknowledged that, although Plaintiffs were forced to witness Ms. Kaler's wrongful harassment of a coworker, Plaintiffs were "not asserting a claim for sexual harassment against themselves." Plaintiffs' claims are, according to counsel, "all about retaliation" resulting from Plaintiffs' allegedly protected complaints. As a result, the Court does not consider whether Plaintiffs have asserted, or could have asserted, claims for direct discrimination against the City based on the City's knowledge of the harassment or its decision to reinstate Ms. Kaler.

No. 25-cv-363

shown that they engaged in protected opposition to discrimination and therefore cannot state a viable claim for retaliation.[4]

## II

To state a Title VII retaliation claim, each Plaintiff must allege facts that, if true, would permit a factfinder to conclude that (1) the Plaintiff engaged in protected activity, (2) the City took an action against her that a reasonable employee would consider materially adverse, and (3) the adverse action was causally connected to the protected activity. *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (setting forth essential elements of a Title VII retaliation claim and the applicable standard when resolving a motion to dismiss for failure to state a claim on which relief can be granted). The parties' dispute centers on whether Plaintiffs have adequately alleged the first of those three required elements.

Under Title VII, "[p]rotected activities fall into two distinct categories: participation or opposition." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998)). The "participation clause" of Title VII prohibits retaliation against employees because they have "'participated in any manner in an investigation, proceeding, or hearing under' Title VII." *Id.* (emphasis removed) (quoting 42 U.S.C. § 2000e–3(a)). The opposition clause, which is narrower in scope, prohibits retaliation against employees because they have "'opposed any practice made an unlawful employment practice'" by Title

---

[4] The City also argues that there is no causal connection between Plaintiffs' participation in the investigation and the City's decision to terminate their employment. *See* Dkt. 17 at 11-14. Because the Court concludes that Plaintiffs have failed to allege protected activity, there is no need to address the City's argument that Plaintiffs have not alleged sufficient facts to establish causation.

No. 25-cv-363

VII. *Id.* (quoting 42 U.S.C. § 2000e–3(a)). Only the opposition clause is applicable in this case.[5]

The question at the heart of the parties' dispute is this: Did Plaintiffs engage in *protected* opposition for purposes of Title VII when they participated in the City's investigations, informed the City of Ms. Kaler's offensive conduct, and opposed their coworker's harassment of another? Plaintiffs say yes. They argue that they "opposed the discrimination (sexual harassment) they witnessed" by participating in interviews about Ms. Kaler's behavior, describing the harassment, and objecting to the "sexually harassing work environment created by [Ms.] Kaler." Dkt. 19 at 8-9.[6] They argue that an employee can engage in protected opposition under Title VII by participating in an employer-led investigation, as recognized in *Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee*, and that their participation in the City's investigation falls squarely within the scope of protection afforded by *Crawford. See id.* at 9-10 (citing *Crawford*, 555 U.S. 271 (2009)).

The City disagrees. It argues that, although employees who participate in employee-led investigations *can* fall within the protection afforded by the opposition clause, this is not *always* the case. The City contends that the opposition clause only protects those who (whether during an internal

---

[5] Plaintiffs do not assert that they participated in an EEOC investigation or engaged in any other activity covered by Title VII's participation clause, and their counsel acknowledged at the hearing that they are not seeking relief under that clause. *Cf. New v. Bd. of Cnty. Commissioners for Tulsa Cnty.*, 434 F. Supp. 3d 1219, 1226 (N.D. Okla. 2020) (recognizing that "[t]he participation clause protects an employee in providing information as part of a formal investigation by the EEOC and it does not apply to participation in an internal investigation by the employer").

[6] Plaintiffs further suggest that Ms. Joliff engaged in protected opposition when, during a phone call with her partner, she complained that she was "tired of Kaler and tired of the harassment," and she did not "know why they brought her back." Dkt. 19 at 9. Plaintiffs have pointed to no case law suggesting that complaints to a partner constitute protected opposition, and the Court could find none. The Court will not consider this conduct in its analysis.

4

No. 25-cv-363

investigation or otherwise) oppose an "an unlawful employment practice." 42 U.S.C.A. § 2000e–3(a). According to the City, Plaintiffs merely opposed the conduct of a coworker and peer. They did not oppose an "employment practice" attributable to the City. Dkt. 17 at 10-11; Dkt. 21 at 6-8. The City concludes that Plaintiffs did not engage in protected opposition as a matter of law because they did not report, criticize, or otherwise oppose *the City's* conduct. Dkt. 17 at 11.

The City has the better argument. The plain language of § 2000e-3 prohibits discrimination against those who have "opposed any practice *made an unlawful employment practice* by [42 U.S.C. chapter 21, subchapter VI]." 42 U.S.C. § 2000e-3 (emphasis added). The term "unlawful employment practice" is specifically defined by statute. Among other things, an employer commits an "unlawful employment practice" when it (1) fails or refuses to hire, discharges, or discriminates against an individual with respect to terms, conditions, or privileges of employment because the employee falls within a protected class; (2) limits, segregates, or classifies employees or applicants in a way that affects an individual's employment opportunities or affects the individual's status as an employee because the individual falls within a protected class; or (3) retaliates against an employee or applicant in violation of § 2000e-3. *See* 42 U.S.C. §§ 2000e-2(a)(1)&(2), 2000e-3.[7]

As the language of Title VII makes clear, "not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice *of an employer*, not an act of discrimination by a private individual." *Lamb v. Montrose Cnty. Sheriff's Off.*, No. 19-1275, 2022 WL 487105, at *4 (10th Cir. Feb. 17, 2022) (emphasis added, internal citation and quotation marks omitted) (quoting *Butler v. Ala.*

---

[7] Title VII also lists other unlawful employment practices and methods of establishing them. *See* 42 U.S.C. § 2000e-2(b)-(d), (k)-(m). Those provisions are not at issue here.

No. 25-cv-363

*Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008)). Thus, to oppose *the City's* employment practice, Plaintiffs were required to allege facts demonstrating that they took some action against *the City's* practice of discriminating in the terms, conditions, or privileges of employment, classifying employees or applicants based on a protected trait, or retaliating against those who opposed or participated in covered proceedings concerning such conduct.

Plaintiffs have not done so here. The amended complaint does not allege that Plaintiffs challenged any wrongful conduct *by the City*. During the investigations that preceded their firing, Plaintiffs did not report that the City itself, a supervisor, or a manager was engaging in sex-based discrimination. *Cf. Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 737 (10th Cir. 2014) (recognizing an employer may be vicariously liable for a supervisor's harassment). Nor did they report harassment that was so severe or pervasive that the conditions of employment were effectively altered. *Cf. Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (recognizing that "Title VII's prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment"). Instead, they reported only that one coworker, Crista Kaler, impermissibly harassed another coworker (not Plaintiffs), and that the City knew of and was investigating that reported harassment.

Plaintiffs failed to allege facts that, if true, would demonstrate that they engaged in "opposition . . . directed at an unlawful employment practice of [the City]." *Lamb*, 2022 WL 487105, at *4 (citations and quotation marks omitted). Although Plaintiffs are not required to prove that they "reported an actual Title VII violation," they are nevertheless required to demonstrate that they had a "reasonable, good-faith belief" that they were opposing "a practice made an unlawful employment practice by Title VII." *Id.* (citations and quotation marks omitted). Plaintiffs do not explain how they, in good faith, believed that they were opposing the City's unlawful employment practice when they reported the harassment of one employee by another. They do not

6

No. 25-cv-363

even allege that they held such a belief. Absent allegations that would permit a factfinder to conclude that Plaintiffs reasonably believed that they opposed conduct that was prohibited by Title VII, their claims cannot proceed. *Id.*; *see Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir.1997) (recognizing that Title VII's opposition clause protects only those who oppose conduct that they reasonably believe to be prohibited by the Act).

Other courts considering this issue have concluded, as this Court does, that a plaintiff who merely reports harassment by a coworker does not engage in protected opposition to a prohibited employment practice for purposes of Title VII. For example, in *Little v. United Technologies*, the Eleventh Circuit considered whether a plaintiff who was harassed after reporting a coworker's use of a racial slur could assert a Title VII retaliation claim. *Little*, 103 F.3d at 958. The court concluded that the plaintiff had not opposed an unlawful employment practice because the conduct complained of was not attributable to the plaintiff's employer. *Id.* at 959-60. Although the plaintiff argued that he reasonably believed the use of the slur to be a violation of Title VII, the court found the plaintiff's argument to be "implausible at best," and that no jury could find that the plaintiff reasonably believed that he had opposed an unlawful employment practice by reporting his coworker's racist comment. *Id.* at 960.

Similarly, in *Silver v. KCA, Inc.*, the Ninth Circuit considered whether an employer engaged in unlawful retaliation by discharging an employee who opposed a "racially discriminatory act of a co-worker." 586 F.2d 138, 140 (9th Cir. 1978). The Ninth Circuit answered the question in the negative, recognizing that only opposition "directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual," falls within the scope of the opposition clause. *Id.* at 141. The court concluded that the plaintiff, who did not argue that her coworker's remark could be imputed to the defendant, had failed to oppose any "practice" by her employer, and had therefore failed to establish the first essential element of her retaliation claim.

No. 25-cv-363

*Id. See also Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (concluding that the plaintiff's claim for retaliation was not cognizable because the plaintiff had challenged discriminatory conduct toward the public but had not presented evidence of "discrimination with respect to the terms and conditions of employment").

The Court recognizes that the conduct that Plaintiffs' challenge is more extensive than the conduct at issue in *Little* and *Silver*, both of which involved single incidents of harassment. *See Little*, 103 F.3d at 958; *Silver*, 586 F.2d at 140. But the determinative question in a retaliation case is not the *number* of incidents that an employee opposes, but whether the opposed incidents (individually or collectively) *can be attributed to the employer*. Plaintiffs have not alleged that the conduct they opposed can be attributed to the City: They did not oppose the City's own misconduct, harassment by a supervisor, or the City's failure to correct harassment or hostile conditions that the City knew of. *See Adler*, 144 F.3d at 673. They opposed Ms. Kaler's conduct, and only Ms. Kaler's conduct. That opposition does not constitute protected opposition to an unlawful employment practice for purposes of Title VII. *See Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 113–14 (10th Cir. 2010) (reversing and remanding for entry of a directed verdict on retaliation claim where the plaintiff's report concerning a coworker's racial slur did not claim any wrongdoing by the defendant employer).

Plaintiffs argue that a Supreme Court decision, *Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee*, compels the opposite conclusion. The Court disagrees. Although, in *Crawford*, the Supreme Court indicated that the plaintiff's "disapproving account of sexually obnoxious behavior toward her by a fellow employee" was "covered by the opposition clause," the plaintiff in that case had complained about *the defendant's*

8

No. 25-cv-363

*employee relations director*, not an ordinary coworker. *Id.* at 273-74, 276.[8] True, some of the statements in *Crawford* are broad, but its holding was not. The Supreme Court held that an employee who opposes an unlawful employment practice by participating in an internal investigation should not be treated differently from an employee who opposes such practices on his own initiative. It did not squarely address the question of whether one employee who reports harassment by another engages in protected opposition. In the absence of controlling precedent to the contrary, this Court will not construe *Crawford* in a way that expands the term "unlawful employment practice" to encompass "coworker misconduct."

The Court has reviewed the remaining cases cited by Plaintiffs and finds that they are not contrary to this Court's holding. Indeed, most of the cases cited by Plaintiffs recognize (as they must) that employees engage in protected opposition when they oppose conduct attributable to their employers. *See Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1327-29, 1340 (10th Cir. 2025) (holding that the plaintiff had engaged in protected opposition when she communicated her belief that *her employer*, acting through her supervisor, had engaged in discrimination); *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1259 (10th Cir. 2021) (reporting racial slurs by manager whose conduct was extreme and pervasive); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923, 926 (10th Cir. 2016) (concluding that the plaintiff engaged in protected opposition when he reported a hostile work environment).[9] As the Court has already recognized,

---

[8] *See Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1125 (10th Cir. 1993) (recognizing that a supervisor who exercises significant control over hiring, firing, or employment conditions is "the alter ego of the employer" and the "employer is liable for the unlawful employment practices of the individual").

[9] *See also Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1185 (10th Cir. 2002) (addressing opposition to racial and religious discrimination by Deputy Warden); *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1016 (10th Cir. 2004) (addressing claim that the plaintiff

*(footnote continues)*

No. 25-cv-363

Plaintiffs have not set forth allegations that would permit a factfinder to conclude that Ms. Kaler's conduct was attributable to the City, or that Plaintiffs believed that it was. Without those allegations, Plaintiffs cannot state a claim for retaliation. Their amended complaint must be dismissed.

### III

Plaintiffs failed to establish the first essential element of their retaliation claim. The City's motion to dismiss is granted, and Plaintiffs' amended complaint is dismissed.

DATED this 6th day of July 2026.

JOHN D. RUSSELL
*United States District Judge*

---

was fired when he expressed his intention to take action to end alleged discrimination by his supervisor); *Booke v. Wheeler*, No. CV 20-2370-KHV, 2021 WL 3737107, at *2 (D. Kan. Aug. 24, 2021) (discussing allegations of harassment by supervisor and creation of a hostile work environment).